United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YEN H. DANG,

          Plaintiff,

   v.

OAKLAND POLICE DEPARTMENT,
et al.,

          Defendants.
_____/

No. C 13-4155 PJH

**ORDER GRANTING MOTIONS
TO DISMISS**

14      Before the court is the motion of defendant Alameda County Sheriff's Office

15 ("ACSO" – sued as "Alameda County Sheriff's Department")  to dismiss the complaint

16 pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1); the motion of defendant

17 City of Oakland Police Department ("the City") to dismiss the complaint pursuant to Rule

18 12(b)(6), or in the alternative, for a more definite statement pursuant to Rule 12(e); the

19 motion of defendant Daniel Winkler and Associates ("Winkler defendants") to dismiss the

20 complaint pursuant to Rule 12(b)(6); and the motion of defendants Bank of America, Bank

21 of New York Mellon fka The Bank of New York ("BNY"), and Recontrust Company, N.A.

22 ("Recontrust" – sued as "Recontrust") (collectively, "foreclosure defendants") to dismiss the

23 complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having read the parties'

24 papers and carefully considered their arguments and the relevant legal authority, the court

25 hereby GRANTS the motions as follows.

26                       **BACKGROUND**

27      Plaintiff Yen H. Dang ("Dang") and her husband Le Cao are the former tenants of

28 the real property located at 5714 Thornhill Drive, Oakland, California ("the Property").  The

United States District Court

For the Northern District of California

Property was formerly owned by Dang's son, Vu Cao.

In 2005, Vu Cao obtained a loan in the amount of $746,250 secured by a note and Deed of Trust on the Property.  After Vu Cao defaulted on the loan payments, a Notice of Default and Intent to Sell was recorded on July 13, 2010 by Recontrust, on behalf of BNY, as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-4.  A Notice of Trustee's Sale was recorded on August 2, 2011, by Recontrust, on behalf of BNY; and a Trustee's Deed Upon Sale was recorded on September 7, 2011, by Recontrust, on behalf of BNY,  stating that the Property had been sold at public auction on August 23, 2011.  The sale extinguished Vu Cao's ownership interest in the Property.

On October 4, 2011, BNY served a Notice to Quit on Vu Cao and "all others in possession," and a Notice to Any Renters living at 5714 Thornhill Drive, Oakland, California.  The Notice to Any Renters allowed tenants or subtenants thirty days to vacate the Property (if any party to the note remained on the property as an occupant), or otherwise ninety days to vacate the Property.  According to the proof of service, service of the "3/30/90 Notice to Quit" was made on Vu Cao, and service of the "Notice to Any Renters" was made on the tenants, by posting a copy of the Notices on October 5, 2011 at the Property, and by mailing a copy to each party at the Property.

Shortly thereafter, Dang filed the first of a series of five bankruptcy petitions.  On November 21, 2011, she filed a Chapter 11 petition for bankruptcy (Case No. 11-72234, Bankr. N.D. Cal.), which was dismissed on December 23, 2011.  A month later, on January 24, 2012, she filed a Chapter 13 petition for bankruptcy (Case No. 12-40651, Bankr. N.D. Cal.), which was dismissed on April 2, 2012.  Both petitions stated Dang's address as 5714 Thornhill Drive, Oakland, California.

Dang asserts that on February 1, 2012, a group of individuals broke into the Property and that she subsequently filed a report with the Oakland Police Department; and that on February 6, 2012, "a group of 5 men and 1 woman appeared" at the Property "with a big truck," allegedly acting on behalf of BNY, to "try to go move the furniture in the house."

United States District Court

For the Northern District of California

1       Meanwhile, on February 14, 2012, BNY, as Trustee for the Certificateholders

2   CWABS, Inc. Asset-Backed Certificates, Series 2005-4, filed an unlawful detainer action in

3   the Superior Court of California, County of Alameda (Case No. RG12616935), against Vu

4   Cao and ten DOE defendants, alleging that Vu Cao was the original trustor under a Deed of

5   Trust securing the Property; that the Deed of Trust contained a power of sale clause that

6   allowed the Trustee to proceed with a non-judicial foreclosure upon default; that the

7   Trustee sold the Property to BNY; that after BNY obtained legal title to the Property, it

8   served a Notice to Quit on Vu Cao and "all others in possession;" that more than 90 days

9   had elapsed since service of the Notice to Quit, and that Vu Cao had failed and refused to

10  deliver possession of the Property, and remained in possession of the Property without

11  BNY's permission or consent.

12      Dang alleges that on March 11, 2012, defendant (and real estate agent) William

13  Ross appeared at the Property with two policemen, and accused Dang and Le Cao of

14  trespassing; and that on March 12, 2012, two Oakland Police Department cars appeared at

15  the Property "pushing" Dang and Le Cao "to move out and to involuntarily abandon

16  possessions" including cash, jewelry, and a cell phone, which they never recovered.

17      On April 3, 2012, Vu Cao filed a Chapter 13 bankruptcy petition (Case No. 12-

18  42976, Bankr. N.D. Cal.), listing his address as 5714 Thornhill Drive, Oakland, California.

19  The Bankruptcy Court issued an order on June 26, 2012, granting BNY's motion for relief

20  from the automatic stay so that it could proceed with the unlawful detainer action.

21      Prior to the issuance of the order granting relief from the automatic stay, Dang filed

22  another Chapter 13 bankruptcy petition on May 29, 2012 (Case No. 12-44593, Bankr. N.D.

23  Cal.). In this filing, Dang stated her address as 2505 11th Avenue, Oakland, California.

24  Based on this, it appears that at least as of May 29, 2012, Dang was no longer living at the

25  Property. The court entered an order dismissing this third bankruptcy petition on June 15,

26  2012.

27      A few weeks later, on July 11, 2012, Dang filed yet another Chapter 13 bankruptcy

28  petition (Case No. 12-45828, Bankr. N.D. Cal.). In this petition, she again stated her

United States District Court
For the Northern District of California

1   address as 2505 11th Avenue, Oakland, California.  Also on July 11, 2012, Le Cao filed a

2   separate Chapter 13 petition (Case No. 12-45829, Bankr. N.D. Cal.), also stating his

3   address as 2505 11th Avenue in Oakland, California.

4           On July 31, 2012, the bankruptcy court issued an order dismissing Dang's case No.

5   12-45828, but retained jurisdiction to hear the Trustee's motion to dismiss the case with a

6   12-month bar to refiling.  On August 8, 2012, the court dismissed Le Cao's case No. 12-

7   45829.

8           On August 20, 2012, The Alameda County Superior Court issued a writ of

9   possession following the July 19, 2012 entry of judgment in the unlawful detainer action

10  (Case No. RG12616935), authorizing the Alameda County Sheriff to enforce the judgment

11  in favor of BNY, the judgment creditor, against Vu Cao and "additional judgment debtors"

12  identified as "all other occupants."  Also on August 20, 2012, BNY filed a notice of dismissal

13  in the unlawful detainer action as to defendants "DOES I through X."

14          On September 10, 2012, Le Cao filed a second Chapter 13 bankruptcy petition

15  (Case No. 12-47476, Bankr. N.D. Cal.), this time again stating his address as 5714

16  Thornhill Drive, Oakland, California, notwithstanding that the Property had been sold at a

17  trustee's sale more than one year prior, and that a writ of possession had been issued

18  nearly three weeks prior to the filing.

19          On September 26, 2012, following a hearing on the Trustee's motion for a 12-month

20  bar, the court issued an amended order of dismissal in Dang's case No. 12-45828, barring

21  Dang from filing another case under the Bankruptcy Code within 12 months from the date

22  of the order.

23          On November 2, 2012, the court granted the Trustee's motion to dismiss Le Cao's

24  case No. 12-47476, ordering that any bankruptcy case filed by or against Le Cao within 180

25  days would not create an automatic stay as to BNY, and would not preclude the execution

26  of a writ of possession on the Property.

27          On January 4, 2013, notwithstanding the bar to refiling imposed in the September

28  26, 2012 order of dismissal in Case No. 12-45828, Dang filed yet another Chapter 13

4

United States District Court

For the Northern District of California

1   bankruptcy petition (Case No. 13-40051, Bankr. N.D. Cal.), again stating her address as

2   5714 Thornhill Drive, Oakland, California.  That petition was dismissed by the court on

3   January 8, 2013.

4         Dang asserts in the complaint in this case that she "resumed her tenancy" at the

5   Property on January 4, 2013, on the basis that BNY had dismissed "DOES I through X"

6   from the unlawful detainer action.

7         On March 13, 2013, Dang filed a civil complaint in Alameda County Superior Court

8   (Case No. RG13671160), stating her address as 5714 Thornhill Drive, Oakland, California

9   (where she alleged she was a "tenant"), and naming the defendants that are named in the

10  present action, and asserting essentially the same causes of action (fraud, elder abuse,

11  wrongful eviction).  On May 22, 2013, Dang filed a notice of change of address, stating her

12  new address as 6548 Foothill Blvd., Oakland, California.

13        Defendants demurred to the complaint, and on July 17, 2013, Dang filed a motion for

14  leave to amend the complaint.  On August 6, 2013, before the demurrers or motion to

15  amend the complaint could be heard, Dang filed a request for dismissal of the entire action.

16

17        Two and a half weeks later, on August 23, 2013, Vu Cao filed a civil action in

18  Alameda County Superior Court, Cao v. Bank of New York Mellon (Case No.

19  RG13693006), against BNY, challenging the non-judicial foreclosure; asserting lack of

20  standing to foreclose, fraud, intentional infliction of emotional distress, quiet title, slander of

21  title, violations of California Civil Code § 2932.5 and Business & Professions Code

22  § 17200; and seeking damages, restitution, declaratory relief, and an accounting.  On

23  December 5, 2013, BNY's demurrer was sustained without leave to amend.

24        On September 9, 2013, approximately a month after dismissing the civil action in the

25  Alameda County Superior Court (Case No. RG13671160), Dang filed the complaint in the

26  present action, asserting causes of action for fraud, deception, elder abuse, theft, and

27  wrongful eviction.  She seeks compensatory and punitive damages in excess of

28  $1,000,000, and also seeks a "reversal" of her eviction from 5714 Thornhill Drive, Oakland,

United States District Court

For the Northern District of California

1   California.

2       In the complaint, Dang alleges that at the time the writ of possession was issued

3   (August 20, 2012), she and her husband Le Cao were tenants of Vu Cao.  She claims that

4   as tenants, they were included in the "DOES I through X" that were dismissed by BNY in

5   the unlawful detainer action on August 20, 2012.  She also asserts that as tenants, she and

6   Le Cao were entitled to receive the pre-foreclosure sale notice to tenants required by

7   California Civil Code §§ 2924.8 and 2924b(c)(2)(D), as well as the prejudgment claim of

8   right to possession required under Civil Code § 415.46, but that BNY failed to provide such

9   notice.

10       Dang asserts further that she and Le Cao were wrongfully evicted, in violation of the

11  City of Oakland's Just Cause for Eviction ordinance, which is codified at Oakland Municipal

12  Code (OMC) chapter 8.22.300 et seq.  Specifically, she alleges that the eviction was

13  unlawful under § 8.22.360(A)(9) because she and Le Cao were tenants, and Le Cao was

14  60 years of age or older, was a disabled tenant, and had resided in the unit for five years or

15  more.

16       Dang asserts further that "on or about January 4, 2013," she and Le Cao "resumed

17  their tenancy on the basis that as tenants," they were included in the "DOES I through X"

18  that had been dismissed by BNY on August 20, 2012 in unlawful detainer action.

19       On October 11, 2013, the foreclosure defendants and the City filed motions to

20  dismiss the complaint.  Under Civil Local Rule 7-3, plaintiff's opposition to these motions

21  was due on October 28, 2013, but in each case was filed more than eight weeks late, on

22  December 23, 2013.  On October 15, 2013, ACSO filed a motion to dismiss.  Plaintiff's

23  opposition was due on November 1, 2013, but was filed more than seven weeks late, on

24  December 24, 2013.  On November 18, 2013, the Winkler defendants filed a motion to

25  dismiss.  Plaintiff's opposition was due on December 5, 2013, but was filed more than four

26  weeks late, on January 8, 2014.

27       ASCO, the City, the Winkler defendants, and the foreclosure defendants (BNY, Bank

28  of America, and Reconstrust) now seek an order dismissing the claims asserted against

**United States District Court**
For the Northern District of California

them.

Defendants Hadi R. Sayed-Ali, Esq.; Miles, Bauer, Bergstrom & Winters, LLP; Wilbur Ross, Jr.; Ceasar Eric Railey; and Nationwide Legal, LLC have made no appearance in the action. On February 7, 2014, the court issued an order to show cause why the court should not dismiss those five defendants pursuant to Federal Rule of Civil Procedure 4(m). The court ordered Dang to file a proof of service showing service of the summons and complaint within 120 days of the date the complaint was filed.

On February 21, 2014, Dang filed a response, stating that "[a]s a pro per litigant," she had "misunderstood that the defendants named had, in fact, been served, and only discovered that each has, in fact, been avoiding service." She requested a short extension of time to complete service.

## DISCUSSION

A.     Legal Standards

1.     Motions to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, in the present action, Dang bears the burden of demonstrating that subject matter jurisdiction exists over this complaint. See Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

**United States District Court**
For the Northern District of California

2.    Motions to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding

United States District Court

For the Northern District of California

1   pro se, the Court has an obligation to construe the pleadings liberally and to afford the

2   plaintiff the benefit of any doubt.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir.1985)

3   (en banc).  However, pro se pleadings must still allege facts sufficient to allow a reviewing

4   court to determine whether a claim has been stated.  Ivey v. Bd. of Regents of Univ. of

5   Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

6       The Ninth Circuit has "repeatedly held that a district court should grant leave to

7   amend even if no request to amend the pleading was made, unless it determines that the

8   pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203

9   F.3d 1122, 1130 (9th Cir. 2000) (citations and quotations omitted).  Dismissal of a pro se

10  complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies

11  of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448

12  (9th Cir.1987) (quoting Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).  In

13  the event dismissal is warranted, it is generally without prejudice, unless it is clear the

14  complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006,

15  1013 (9th Cir. 2005).

16      Although the court generally may not consider material outside the pleadings when

17  resolving a motion to dismiss for failure to state a claim, the court may consider matters

18  that are properly the subject of judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668,

19  688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th

20  Cir. 1986).  Additionally, the court may consider exhibits attached to the complaint, see Hal

21  Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir.

22  1989), as well as documents referenced extensively in the complaint and documents that

23  form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster Joint Counsel

24  Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

25      Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

26  shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be

27  pled with specificity, including an account of the "time, place, and specific content of the

28  false representations as well as the identities of the parties to the misrepresentations."

United States District Court

For the Northern District of California

1  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).  "[A]llegations

2  of fraud must be specific enough to give defendants notice of the particular misconduct

3  which is alleged to constitute the fraud charged so that they can defend against the charge

4  and not just deny that they have done anything wrong."  Bly-Magee v. California, 236 F.3d

5  1014, 1019 (9th Cir. 2001) (citation and quotations omitted).  In addition, the plaintiff must

6  do more than simply allege the neutral facts necessary to identify the transaction; he must

7  also explain why the disputed statement was untrue or misleading at the time it was made.

8  Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

9  B.    Defendants' Motions

10      ACSO, the City, the Winkler defendants, and the foreclosure defendants all argue

11  that the complaint fails to state a claim and/or that the court lacks subject matter jurisdiction

12  over the claims asserted.

13      As an initial matter, the court notes that Le Cao is not a party to this action.  As a

14  non-attorney, Dang may not represent Le Cao.  See Simon v. Hartford Life, Inc., 546 F.3d

15  661, 664 (9th Cir. 2008) (privilege to represent oneself pro se provided by 28 U.S.C.

16  § 1654 is personal to litigant and does not extend to other parties/entities); Johns v. Cnty of

17  San Diego, 114 F.3d 874, 876 (9th Cir. 1997) (non-attorney may appear pro se on own

18  behalf, but has no authority to appear as an attorney for others than himself).

19      In addition, "[a]n action must be prosecuted in the name of the real party in interest."

20  Fed. R. Civ. P. 17(a).  The real party in interest is the person who has the right to sue under

21  the substantive law.  In general, it is the person holding title to the claim of property

22  involved, as opposed to others who may be merely interested in or benefit by the litigation.

23  See U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986).  Here, the third

24  cause of action for elder abuse alleges that "defendants" directed against Le Cao "physical

25  abuse," "emotional abuse," and "neglect and endangerment."  As a non-attorney, and

26  lacking any cognizable injury, Dang may not pursue this claim, and the third cause of action

27  must be DISMISSED.

28      In addition, Dang was not a party to the note and Deed of Trust, and thus has no

10

**United States District Court**
For the Northern District of California

standing to challenge the nonjudicial foreclosure.  The general rule is that only parties with an interest in a loan secured by real property or in the underlying property may attempt to set aside a nonjudicial foreclosure.  See Bank of America Leasing & Capital LLC v. 3 Arch Tr. Servs., 180 Cal. App. 4th 1090, 1103 (2009); Royal Thrift and Loan Co. v. County Escrow, Inc., 123 Cal. App. 4th 24, 33 (2004).  Thus, to the extent that any of Dang's claims can be construed as a challenge to the non-judicial foreclosure, they must be DISMISSED.

Finally, any challenge to the writ of possession issued by the Alameda County Superior Court following the judgment in the unlawful detainer action is barred by the Rooker-Feldman doctrine.  Under that doctrine, federal courts lack jurisdiction to review the propriety of state court rulings, including the issuance of a judgment and writ of possession in connection with a state court unlawful detainer proceeding.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (Rooker-Feldman doctrine bars "cases brought by state-court loser complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments"); Drawsans v. F.F. Props., L.L.P., 866 F.Supp. 2d 1110, 1123 (N.D. Cal. 2011) (attempt to challenge adverse ruling in unlawful detainer proceeding is barred under Rooker-Feldman doctrine); Reusser v. Wachovia Bank, N.A., 2006 WL 2334844 at *2-3 (D. Or. Aug. 10, 2006) (claims challenging validity of state court foreclosure and eviction judgments barred by Rooker-Feldman doctrine).

The first cause of action for fraud is based on the allegation that "defendants" falsely represented that they were in possession of "the necessary and required instruments to perform an eviction."  The second cause of action for deception is based on the allegation that "defendants" misrepresented that they were in lawful possession of the Deed of Trust or note "for the purpose of enforcing a lawful eviction," and that they failed to provide Dang and Le Cao (not a party herein) – alleged to be "tenants" – with "legally-required notices in respect of said eviction."  The fourth cause of action for wrongful eviction is based on the allegation that "defendants" failed to comply with state law and City of Oakland ordinances

United States District Court

For the Northern District of California

1   "in fraudulently evicting tenants" Dang and Le Cao from 5714 Thornhill Drive, Oakland.

2          To the extent that Dang is asserting that the eviction was unlawful because of some

3   impropriety in the unlawful detainer proceeding and judgment, or some defect in the writ of

4   possession, or is asserting that BNY did not have legal possession of the Property following

5   the non-judicial foreclosure, such that it could pursue an action for unlawful detainer against

6   the occupants of the Property, such claims are barred by the Rooker-Feldman doctrine and

7   must be DISMISSED.

8          1.      Alameda County Sheriff's Office's motion

9          The only claims asserted against ASCO are that Dang and Le Cao were "wrongfully

10  and illegally evicted . . . as a direct result of defendant [ASCO] executing an eviction . . . yet

11  possessing no instrument by which they [sic] could evict tenants legally."  Dang also

12  alleges that ASCO was "misled" by other defendants who "falsely inferr[ed] that all legal

13  requirements for eviction had been met."

14         ASCO argues that Dang has alleged no facts showing that the writ of possession

15  was invalid on its face or that the executing officer(s) knew or should have known about

16  any improprieties on the face of the writ.  ASCO also contends that Dang lacks standing to

17  pursue claims on behalf of Le Cao; that Dang's claims are barred because she has failed to

18  allege compliance with the claims presentation requirement set forth in the California Tort

19  Claims Act, Cal. Gov't Code § 900, et seq.; that Dang has failed to establish a statutory

20  basis for liability as required by Government Code § 815(a); and that all five causes of

21  action fail to state a claim against ASCO.

22         In opposition, Dang asserts that all arguments raised by ASCO fail, and that to the

23  extent the court finds any deficiencies in the complaint, any dismissal should be with leave

24  to amend.

25         The court finds that ACSO's motion must be GRANTED.  Dang's claim against

26  ACSO is based solely on actions taken or not taken by the ASCO in connection with the

27  execution of the writ of possession and the eviction of Dang and Le Cao from the Property.

28  As noted above, any challenge to the writ of possession itself is barred by the Rooker-

United States District Court

For the Northern District of California

1    Feldman doctrine.

2        In addition, officers who execute a court order valid on its face are entitled to

3    immunity.  See Cal. Gov't Code § 820.4.  This immunity, by virtue of Gov't Code § 815.2,

4    inures to the benefit of the public entity employing the particular public employee.  Further,

5    California Code of Civil Procedure § 262.1 immunizes the Sheriff from liability for executing

6    "process and orders" which are "regular on their face and issued by competent authority,

7    whatever may be the defect in the proceedings upon which they were issued."

8        In this case, the writ of possession authorized enforcement of the judgment by the

9    Sheriff of Alameda County, against the "judgment debtors," which included Vu Cao and "all

10   other occupants."  Thus, the writ was "regular on its face" as to both Vu Cao and "all other

11   occupants," which included Dang and Le Cao.  A sheriff is not liable for wrongful eviction if

12   the writ is valid on its face, even if it is invalid or unenforceable because of some defect in

13   the procedures.  See George v. County of San Luis Obispo, 78 Cal. App. 4th 1048, 1054

14   (2000).

15       Because the court finds that amendment would be futile, the claims against ACSO

16   are DISMISSED with prejudice.[1]

17       2.    City of Oakland's motion

18       The only allegations in the complaint that even vaguely reference the City of

19   Oakland are the following:  First, Dang contends that on February 1, 2012, while she and

20   her husband Le Cao were at church, "persons unknown but believed to be DOES 1-100

21   employees/contractors acting in concert with" the foreclosure defendants and the Winkler

22   defendants "broke into 5714 Thornhill around 8:30 a.m."  Following this, Dang filed a report

23   with the Oakland Police Department.  She asserts that five days later, on February 6, 2012,

_____

25       [1] ACSO also argues at some length that the complaint fails to state a claim under 42
     U.S.C. § 1983 or § 1985.  This argument appears to be prompted by the conclusory allegation
26   in the "Jurisdiction" section of the complaint that the court has original jurisdiction over the
     claims in this action under, among other things, 42 U.S.C. § 1983.  However, there are five
27   state law claims pled in the complaint, and no federal claim, let alone a claim of constitutional
     violations.  As plaintiff alleges no claim under § 1983, the court does not address this argument
28   or plaintiff's lengthy response, which in any event is largely incomprehensible.  The court also
     finds it unnecessary to address the remaining arguments raised by ACSO.

United States District Court

For the Northern District of California

1   "a group of 5 men and 1 woman appeared at 5714 Thornhill with a big truck . . . allegedly

2   acting upon an order of" BNY to "go move the furniture in the house."  Apart from the

3   assertion that she filed a police report, there are no allegations involving the City of

4   Oakland in connection with these events.

5        Second, Dang contends that on March 11, 2012, defendant Wilbur Ross "appeared

6   at 5714 Thornhill with 2 policemen, accusing . . . Dang . . . and her husband Le Cao o[f]

7   trespassing, and demanding [they] . . . leave the house immediately."  When Dang and Le

8   Cao refused to leave, they "were advised they had 2 days to move out."  The following day,

9   March 12, 2012, "two police cars of defendant Oakland Police Department appeared at

10  5714 Thornhill pushing" Dang and Le Cao "to move out, and to involuntarily abandon

11  possessions" including $460.00, items of jewelry valued at $20,000.00, and a cell phone

12  valued at $250.00.  She asserts that a number of the named defendants (but not the City of

13  Oakland) "caused the theft of" the possessions listed above.

14       The City argues that the claims asserted against it must be dismissed, for three main

15  reasons – Dang failed to comply with the claims presentation requirement of the California

16  Tort Claims Act ("CTCA"), and failed to allege a statutory basis giving rise to city liability for

17  her state law causes of action; Dang's claim for punitive damages is barred because public

18  entities are exempt from liability for punitive damages; and the complaint as a whole fails to

19  state a claim because it is vague and ambiguous, and because the claims, which arise from

20  separate and distinct occurrences, are not stated as separate counts.

21       Dang's opposition does not address any of the arguments made by the City, with the

22  exception of the third argument.  And as to that, Dang's only response is that if the court

23  finds the complaint fails to state a claim, the appropriate remedy is dismissal with leave to

24  amend.  However, she does not provide any explanation of how she could amend the

25  complaint to state a claim against the City of Oakland.

26       The court finds that the motion must be GRANTED.  First, all claims asserted

27  against the City are barred because Dang failed to comply with the CTCA, which provides

28  that no suit for money or damages may be brought against a public entity until a written

14

United States District Court
For the Northern District of California

claim has been presented to the entity and the claim either has been acted upon or is

deemed to have been rejected.  Cal. Gov't Code §§ 905, 945.4; <u>Sparks v. Kern County Bd.</u>

<u>of Supervisors</u>, 173 Cal. App. 4th 794, 798 (2009).  This claims presentation requirement

applies to all state law causes of action seeking monetary relief, regardless of the theory of

the action.  <u>Gatto v. County of Sonoma</u>, 98 Cal. App. 4th 744, 760-65 (2009).

The failure to timely present a claim for money or damages to a public entity bars the

plaintiff from bringing suit against the entity.  <u>Sparks</u>, 173 Cal. App. 4th at 798.[2]  Further, a

plaintiff must allege in the complaint compliance or circumstances excusing compliance

with the claims presentation requirement in order to state facts sufficient to constitute a

cause of action against a public entity.  <u>State v. Superior Court (Bodde)</u>, 32 Cal. 4th 1234,

1239-45 (2004).

Here, Dang seeks, among other things, compensatory damages in the sum of over

$1,000,000.  However, the complaint does not allege any facts showing or excusing

compliance with the CTCA's presentation process.  Because compliance with the CTCA is

an element of a claim against a public entity, Dang has failed to state a claim to the extent

she seeks damages from the City of Oakland.

In addition, Dang has not clearly alleged a statutory basis giving rise to City liability.

A public entity is not liable for injury "[e]xcept as otherwise provided by statute . . . ."  Cal.

Gov't Code § 815(a).  All common-law or judicially-declared forms of liability for public

entities have been abolished, and public entity liability is wholly dependent on statute.  <u>See</u>

<u>In re Ground Water Cases</u>, 154 Cal. App. 4th 659, 688 (2007).  In the absence of a statute

subjecting the public entity to civil liability, the public entity's sovereign immunity bars suit.

<u>Id.</u>; <u>see also</u> <u>Keyes v. Santa Clara Valley Water Dist.</u>, 128 Cal. App. 3d 882, 885-86 (1982).

In the complaint, Dang asserts causes of action for fraud, deception, elder abuse,

theft, and wrongful eviction.  She references Civil Code § 1710 and § 1572 as bases for the

---

[2]  A claim against a public entity must be presented not later than six months after the accrual of the cause of action. California Government Code § 911.2.

United States District Court

For the Northern District of California

1    fraud and deception claims, but fails to allege any facts supporting those claims against the

2    City.  In federal court, fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b).  Here,

3    not only has Dang not alleged fraud with particularity, she has not alleged a single fact

4    showing that the City engaged in any wrongful behavior, let alone fraud.

5        Dang also asserts the elder abuse claim pursuant to California Penal Code § 368.

6    However, § 368 is a criminal statute providing criminal penalties for elder abuse.  It does

7    not provide for a private right of action.  See Sutton v. Holz, 2007 WL 3027345 at *4 (N.D.

8    Cal. Oct. 15, 2007).  Moreover, as stated above in the introductory section, Dang does not

9    have standing to assert a claim of elder abuse on behalf of Le Cao.

10       Finally, with regard to the wrongful eviction claim, Dang cites only the Just Cause for

11   Eviction Ordinance, but alleges no facts showing that the City had any involvement in the

12   eviction process, and appears to be alleging this claim only against the foreclosure

13   defendants.

14       The court will grant leave to amend, but only to the extent that Dang can show

15   compliance with the Tort Claims Act's presentation requirement.  Because compliance with

16   the claims presentation requirement is a condition precedent to filing suit, Munoz v. State of

17   California, 33 Cal. App. 4th 1767, 1777 (1995), Dang's claims against the City are barred

18   unless she can show compliance prior to filing suit, as set forth above.

19       3.    Winkler defendants' motion

20       The only allegations that reference the Winkler defendants are that "on or about

21   February 1, 2012, . . . persons unknown but believed to be DOES 1-100, employees/

22   contractors acting in concert with" certain of the named defendants including the Winkler

23   defendants "broke into 5714 Thornhill around 8:30 a.m.[;]" and that on March 12, 2012,

24   "DOES 1-100, employees/contractors acting in concert with defendants [including the

25   Winkler defendants] committed and/or caused the theft of" certain items belonging to Dang

26   and Le Cao, including $460.00 in currency and coins, $20,000 worth of jewelry, and a cell

27   phone worth $250.00.

28       The Winkler defendants argue that the complaint fails to state any cognizable claim

United States District Court

For the Northern District of California

against them.  First, they assert that there are no facts pled showing that they had any involvement in the alleged fraud, deception, elder abuse, or wrongful eviction.  As for the claim of theft (or conversion), the Winkler defendants contend that the vague allegation that they had anything to do with a break-in on February 1, 2012 is of no significance, as the alleged break-in happened more than a month before the alleged theft.  As to the alleged theft, defendants assert that the conclusory allegation that defendants "committed and/or caused the theft" of the missing items is directly contradicted by the allegation and admission that Dang and Le Cao abandoned their property when they were removed from the premises.

In opposition, Dang contends that the allegation that "unknown persons" were "acting in concert with" all the other defendants are based on information and belief, and that if the court finds the allegations insufficient, the appropriate course is for the court to grant leave to amend.  However, she provides no explanation as to how she would amend the complaint so as to state a claim against the Winkler defendants.

The court finds that the motion must be GRANTED.  A review of the complaint indicates that the only one of the five purported causes of action that relates at all to the Winkler defendants is the cause of action for theft or conversion.  The elements of a cause of action for conversion are "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1581 (2005) (quotation and citation omitted); see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992).

Here, while the complaint alleges in vague and conclusory terms that the Winkler defendants had some involvement with the alleged theft, there are no facts alleged sufficient to state a plausible claim.  The court will grant leave to amend as to the cause of action for theft/conversion only, to allege facts supporting the elements of the claim.

    4.    Foreclosure defendants' motion

The foreclosure defendants make a number of general arguments in favor of

17

United States District Court
For the Northern District of California

1    dismissal, and also argue that each of the five causes of action alleged in the complaint

2    fails to state a claim.

3        First, defendants assert that the recordation of the Trustee's Deed Upon Sale

4    creates a presumption that the foreclosure sale was lawfully conducted, and that Dang was

5    not entitled to the notices under Civil Code § 2924.8(d) or § 2924b(c)(2)(D).  Second, they

6    argue that Dang has not stated a cause of action for violation of Oakland's Just Cause for

7    Eviction Ordinance.  Third, they contend that Dang's assertion that she was not provided

8    with a prejudgment claim of right to possession as required by Civil Code § 415.46 is

9    barred by the doctrine of collateral estoppel.  Fourth, they argue that Dang cannot pursue

10   any post-eviction claims, as she was willfully trespassing on the Property.

11       With regard to the five causes of action alleged in the complaint, the foreclosure

12   defendants argue that the fraud claim fails because the issuance of the writ of possession

13   conclusively settled the question whether defendants had the right to initiate the eviction

14   process; that the deception claim fails because Dang lacks standing to pursue a claim

15   based on an alleged wrongful eviction; that the elder abuse claim fails because Dang has

16   not alleged facts sufficient to support the claim, and in any event, lacks standing to pursue

17   a claim on behalf of a non-party to the litigation; that the wrongful eviction claim fails

18   because it does not plead facts sufficient to support the claim, and because it is based on

19   an irrelevant municipal ordinance; and that the theft (conversion) claim fails because the

20   facts as pled in the complaint show that Dang abandoned the property, not that defendants

21   intended to exercise some act of ownership over the property or to prevent her from taking

22   possession of the property.

23       In opposition, Dang concedes that neither she nor Le Cao were parties to the note

24   and Deed of Trust.  However, as the court understands the argument, her position is that

25   she has standing to challenge the non-judicial foreclosure because it provided the "sole

26   foundation" for the claimed legality of the eviction; and because as a tenant living on the

27   Property at the time of the foreclosure, she was entitled to receive a prejudgment claim of

28   right of possession pursuant to California Civil Code § 415.46, as well as the notices under

United States District Court

For the Northern District of California

1   Civil Code § 2924.8(d) and § 2924b(c)(2)(D).

2       Dang also argues that the foreclosure was unlawful for numerous reasons including

3   that documents related to the foreclosure may have contained forged signatures, and that

4   BNY was not the true owner of the loan because its chain of ownership had been broken by

5   a defective transfer of the loan to a securitized trust.

6       Finally, she asserts that the eviction clearly violated the Just Cause for Eviction

7   Ordinance; and that she should be allowed to pursue the elder abuse claim based on the

8   allegation in the complaint that the result of the alleged elder abuse was that Le Cao would

9   "require care and assistance from his wife" (Dang).

10      The court finds that the motion must be GRANTED.  First, the court notes that while

11  the complaint does not allege a claim of wrongful foreclosure, Dang asserts in the first

12  cause of action for fraud that she "relied on the representation that [d]efendant [sic] had the

13  necessary and/or required instruments to foreclose;" and in the second cause of action for

14  deception, that defendants represented to her that "they were in lawful possession of the

15  Deed of Trust or note."

16      Because Dang was not a party to the promissory note and Deed of Trust pursuant to

17  which the Trustee's Sale was conducted, she lacks standing to challenge the nonjudicial

18  foreclosure.  In addition, because the recordation of a Trustee's Deed Upon Sale creates

19  an irrebutable presumption that the sale was conducted regularly and properly, Cal. Civ.

20  Code § 2924; Royal Thrift and Loan Co. v. County Excrow, Inc., 123 Cal. App. 4th 24, 32

21  (2004), Dang cannot state a claim for fraud and deception based on the non-judicial

22  foreclosure process.[3]

23  _____

24      [3] Nor can she state a claim based on the alleged failure to provide her with notices
    under Civil Code § 2924.8 or § 2924b(c)(2)(d).  Section § 2924.8 applies only to "loans
25  secured by residential real property, and if the billing address for the mortgage note is different
    than the property address."  Cal. Civ. Code § 2924.8(d).  Here, Dang alleges that Vu Cao lived
26  on the property, and his bankruptcy filings establish that.  Thus, there was no requirement that
    in addition to posting notice of the sale, defendants were also required to mail the notice to the
27  residents of the property.  With regard to § 2924b(c)(2)(d), that section pertains to the
    requirement that a foreclosing entity provide notices of default and sale to certain interested
28  parties who had provided such entity with constructive notice of their intent, by recording an
    instrument at the office of the county recorder.  Here, Dang recorded no such instrument, and

19

United States District Court

For the Northern District of California

To the extent that the fraud and deception claims are based on the allegation that "[d]efendants" misrepresented that they "were in possession of the necessary and required instruments to perform an eviction," and on the allegation that defendants "failed to provide" Dang and Cao Le "with legally required notices in respect of such eviction," the court finds that the complaint fails to state a claim.

The allegations in these causes of action are so vague as to be almost meaningless. However, to the extent that "the required instruments to perform an eviction" is intended as a reference to lawful possession of title to the property, that appears to be another version of the "unlawful foreclosure" allegation, which the court has already determined cannot state a claim. Moreover, Dang is in effect attempting to appeal the judgment of the Alameda County Superior Court and subsequent issuance of the writ of possession, a claim she is not allowed to pursue in this court for the reasons stated above.

The court cannot determine the meaning of the "legally required notices in respect of such eviction." If Dang is referring to the service of the summons, complaint, and prejudgment claim of right to possession, pursuant to California Civil Procedure Code § 415.46, that claim is barred. The writ of possession, issued by the Alameda County Superior Court, states on its face that the prejudgment claim of right to possession "was served in compliance with CCP 415.46," and that "[t]he judgment includes all tenants, subtenants, named claimants, and other occupants of the premises." The finding that the prejudgment claim of right of possession was served in accordance with § 415.46 was necessary for the Superior Court to issue the judgment in the unlawful detainer action, and Dang cannot base a claim in this court on the assertion that such service did not occur.

With regard to the third cause of action for elder abuse, Dang lacks standing to pursue this claim, for the reasons stated above. In addition, to the extent that Dang intended to allege a claim under the Elder Abuse Act, California Welfare and Institutions Code § 15610, et seq., rather than a claim under the Penal Code, she has failed to allege

---

thus was not entitled to receive notice under § 2924(c)(2)(d).

United States District Court

For the Northern District of California

facts sufficient to state a claim.  The Elder Abuse Act does not create a cause of action, but instead permits the recovery of enhanced remedies under certain circumstances.  See Berkly v. Dowds, 152 Cal. App. 4th 518, 529 (2007).  Here, Dang has not alleged a "wrongful act" in the sense of an unlawful act, and has not asserted a viable claim under which remedies could be enhanced by an Elder Abuse Act claim.

With regard to the fourth cause of action for theft/conversion, the court finds that the complaint fails to state a claim because it does not allege facts sufficient to support the elements of the claim.  Dang has not alleged facts showing that she owned or had the right to possession of the allegedly converted property at the time of the conversion, or that any particular defendant engaged in conversion by a wrongful act.  Indeed, the complaint does not clearly allege when Dang was residing at the Property, or when the actual eviction occurred.

Dang claims there was a "break-in" in February 2012, and that in March 2012, two Oakland Police Department cars appeared at the Property "pushing" Dang and Le Cao to move out, and that the alleged theft occurred at that time.  It is clear from her filings in the Bankruptcy Court that she did not reside on the Property from at least May 29, 2012 until sometime after July 11, 2012, and she claims to have "resumed her tenancy" on January 4, 2013.  The writ of possession was issued on August 29, 2012, but there is no allegation as to when it was executed.  To the extent that Dang is alleging conversion in connection with the eviction, the court will grant leave to amend, to plead facts sufficient to support the elements of a cause of action for conversion.

With regard to the fifth cause of action for wrongful eviction, the court finds that the complaint fails to state a claim.  A claim for wrongful eviction requires the dispossession of a party who had a right to possession by one who had no right to evict the other party from the property.  Cunningham v. Universal Underwriters, 98 Cal. App. 4th 1141, 1149-50 (2002).  The elements of a claim of wrongful eviction are that a party is in "peaceable possession" of property, and he is evicted by someone who entered forcibly.  See Spinks v. Equity Residential Briarwood Apts., 171 Cal. App. 4th 1004, 1037 (2009).

United States District Court
For the Northern District of California

1  "Forcible entry" may involve entry "by means of breaking open doors or windows," or

2  it may be accomplished by unlocking a tenant's door without his or her consent, and

3  removing the contents of the premises, or even by entering and changing the locks without

4  the lawful tenant's permission. Id. at 1038-39.  An owner seeking to recover possession of

5  premises is prohibited from relying on such "forcible" self-help, and must instead make use

6  of judicial process.  Id.; see also Glass v. Nejafi, 78 Cal. App. 4th 45, 49 (2000).

7  Here, Dang has not stated a claim for wrongful eviction under California law, as she

8  has not alleged facts sufficient to support the elements of the claim.  Dang was evicted

9  following a judgment in favor of BNY in the unlawful detainer action, pursuant to a valid writ

10  of possession.  "A valid writ of execution is the ultimate indispensable element of the legal

11  process by which a party entitled to possession of the property acquires possession."  See

12  Bedi v. McMullan, 160 Cal. App. 3d 272, 276 (1984).

13  Judgment creditors are immune from liability for wrongful eviction if they proceed in

14  accordance with "orderly judicial processes" – i.e., apply for an order directing the clerk to

15  issue the writ, secure the writ pursuant to court order, and recover possession under that

16  authority – even if the writ is later determined to be invalid.  See Glass, 78 Cal. App. 4th at

17  50-51.  Dang has alleged no facts showing that BNY or any other defendant obtained

18  possession of the Property by engaging in "forcible" self-help rather than making use of the

19  judicial process, and indeed, the allegations in the complaint show that BNY obtained a

20  judgment in its favor in the unlawful detainer action, and that the court issued a writ of

21  possession pursuant to that judgment.

22  Dang's assertion of wrongful eviction based on an alleged violation of the Just

23  Cause for Eviction Ordinance is similarly defective.  The Just Cause for Eviction Ordinance

24  was adopted in the November 2002 general election as initiative Measure EE.[4]  Rental

25  Housing Assn. of Northern Alameda County v. City of Oakland, 171 Cal. App. 4th 741, 749

26  (2009).  Measure EE, by its terms, was intended to prohibit a landlord from terminating a

27

28  _____

[4]  Measure EE is codified at Oakland Municipal Code (OMC) chapter 8.22.300, et seq.

United States District Court
For the Northern District of California

1   tenancy without good cause, and to "protect[ ] tenants against arbitrary, unreasonable,

2   discriminatory, or retaliatory evictions . . . ."  According to the Ordinance, the eviction

3   protections "would strengthen and effectuate existing rent control in Oakland . . . ."  OMC

4   § 8.22.320.  The Ordinance provides that a landlord may not evict a tenant except for one

5   of the grounds enumerated therein.  OMC § 8.22.360.

6        The basis of Dang's claim under the Just Cause for Eviction Ordinance is that

7   defendants violated § 8.22.360A.9.e.i of the Ordinance by evicting her and husband Le Cao

8   with "full knowledge" that they were tenants, that Le Cao was over 60 years of age, was

9   disabled, and had resided in the unit for five years or more.  However, this prohibition on

10  eviction applies to subsection A.9 only, which provides good cause for eviction where

11      [t]he owner of record seeks in good faith, without ulterior reasons and with
       honest intent, to recover possession for his or her own use and occupancy as
12      his or her principal residence, or for the use and occupancy as a principal
       residence by the owner of record's spouse, domestic partner, child, parent, or
13      grandparent.

14  OMC § 8.22.360A.9.e.i.  In the present action, there is no allegation that BNY was

15  attempting to recover possession of the Property for its own use, and subsection A.9 is

16  inapplicable.

17                              **CONCLUSION**

18       In accordance with the foregoing, defendants' motions to dismiss are GRANTED.

19       1.    The claims asserted against the Alameda County Sheriff's Office are

20  DISMISSED WITH PREJUDICE.  No further claim against this defendant may be asserted

21  in an amended complaint, as this defendant is DISMISSED from the case.

22       2.    The claims asserted against the City of Oakland Police Department are

23  DISMISSED, with leave to amend only to the extent that plaintiff can allege facts showing

24  compliance with the Tort Claims Act's presentation requirement.  If plaintiff cannot allege

25  such facts, claims against the City may not be re-alleged in any amended complaint.

26       3.    The claims asserted against the Winkler defendants are DISMISSED, with

27  leave to amend as to the cause of action for theft/conversion only.  No other claims may be

28  asserted against these defendants in an amended complaint.

United States District Court

For the Northern District of California

4.      The claims asserted against the foreclosure defendants (Bank of America, BNY, and Reconstrust) are DISMISSED, with leave to amend as to the cause of action for theft/conversion only.  In addition, plaintiff must allege facts supporting this claim as to each defendant separately.  No other claims may be asserted against these defendants in an amended complaint.

5.      Plaintiff's request for an extension of time to serve the summons and complaint on defendants Hadi R. Sayed-Ali, Esq.; Miles, Bauer, Bergstrom & Winters, LLP; Wilbur Ross, Jr.; Ceasar Eric Railey; and Nationwide Legal, LLC is GRANTED.  No later than March 28, 2014, Dang must file a proof of service showing service of the summons and complaint on those defendants no later than March 26, 2014.  Failure to file the proof of service as ordered will result in a dismissal of defendants Hadi R. Sayed-Ali, Esq.; Miles, Bauer, Bergstrom & Winters, LLP; Wilbur Ross, Jr.; Ceasar Eric Railey; and Nationwide Legal, LLC pursuant to Federal Rule of Civil Procedure 4(m).

6.      Any amended complaint must be filed no later than March 28, 2014.  No new claims and no new parties may be added without leave of court; and no dismissed party may be named and no dismissed claim may be re-asserted in the amended complaint.

7.      No extensions to any of deadlines imposed herein will be granted.  Further, plaintiff is ORDERED to comply with the Federal Rules of Civil Procedure and the Civil Local Rules of this court.

**IT IS SO ORDERED.**

Dated:  February 26, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

24